38818. BURKE v. LIFE INSURANCE COMPANY OF GEORGIA.

Decided November 7, 1961—Rehearing denied November 29, 1961.

*Walton Hardin*, for plaintiff in error.

*Clement E. Sutton*, contra.

JORDAN, Judge. 1. "A general demurrer to a petition should not be sustained if the facts entitle the plaintiff to any of the substantial relief prayed." *Davis v. Garden Hills Corp.*, 172 Ga. 311 (157 SE 472).

If a petition sets forth a right of recovery in any amount against the defendant, the general demurrer should be overruled. *Conway v. Housing Authority of the City of Atlanta*, 102 Ga. App. 333 (116 SE2d 331). See also *Regenstein v. State Revenue Commission*, 58 Ga. App. 94 (197 SE 865); *Harris County v. Brady*, 115 Ga. 767 (42 SE 71).

In *Augusta & Savannah R. Co. v. Lark*, 97 Ga. 800 (25 SE 175), the court stated: "In determining whether or not the trial court erred in overruling a general demurrer to a declaration, this court cannot look beyond the declaration itself, nor consider a 'written agreement of facts entered into between the parties for the purposes of said demurrer.' Such agreement is no part of the pleadings, and cannot be treated as an amendment to the declaration unless made so by a proper order." In ruling upon a general demurrer the court can look only to the petition and attached exhibits, and cannot consider extraneous matters such as a proffer of a writing which counsel agree the court may consider (*Rembert v. Ellis*, 193 Ga. 60, 17 SE2d 165, 137 ALR 479), the defendant's answer (*Crowley v. Calhoun*, 161 Ga. 354, 130 SE 563), or defendant's cross-action (*Sims v. Etheridge*, 169 Ga. 400, 150 SE 647).

"It is true that a petition, when considered on general demurrer must be construed most strongly against the pleader. . .

But this does not mean that the petition must be given a strained construction, in violation of its reasonable and necessary intendment." *Toler v. Goodin,* 200 Ga. 527 (37 SE2d 609). See also *New Cigar Co. v. Broken Spur, Inc.,* 103 Ga. App. 395 (119 SE2d 133).

Applying these principles of law to the instant case, the petition clearly sets forth a cause of action. In ruling upon the general demurrer, the court should not have considered a statement of the plaintiff's counsel that the defendant offered to pay a portion of the amount sued for. Though the petition alleges the defendant refused to pay more than $1,034, this allegation should not be construed to mean the plaintiff has received such amount. At most, it could only mean a tender of this amount (without deciding such issue) which would *not* extinguish the liability of the defendant under the contract, but would only go to relieve the defendant from payment of court costs and interest from the date the tender was made, if, in fact, tender was made. *Ragan v. Newton,* 27 Ga. App. 534 (109 SE 412); *Jones v. Peacock,* 29 Ga. App. 240 (114 SE 646); *Renfroe v. Butts,* 192 Ga. 720 (16 SE2d 551); *Ward v. McGuire,* 213 Ga. 563 (100 SE2d 276). The sustaining of the general demurrer in the instant case adjudicated that this plaintiff had no cause of action in any amount against this defendant. Plaintiff's petition having set forth a cause of action, the trial court erred in sustaining the general demurrer.

2. Grounds 1, 2, 3, 5, and 6 of the special demurrer complain of the failure of the plaintiff to attach a copy of the insurance policy to the petition. The plaintiff, by an amendment, attached such policy as an exhibit, which met the criticism of these grounds. The trial court erred in sustaining these grounds of the demurrer.

3. We next come to an examination of the policy in an effort to determine whether or not the accidental death benefit provisions of this policy were in effect at the time of the loss thereunder.

The language in the instant policy is as follows: "Upon receipt at the home office of the company of due proof that the insured *after attaining age ten and prior to attaining age sixty,*

*and while the policy is maintained in full force and effect during the premium paying period, has sustained after the date of this policy* bodily injuries effected solely through external, violent and accidental means, of which except in the case of drowning there is a visible contusion or wound on the exterior of the body of the insured, causing death, and if such death oc-- curred within ninety days after such injuries were sustained, and as the direct result thereof independent of all other causes, the company will pay in addition to any other sums due under this policy and subject to its provisions an accidental death benefit equal to the amount of life insurance then payable at death, . . . ." (Emphasis supplied).

The meaning to be given the double indemnity provision here depends upon whether the words "during the premium paying period" constitute a limiting phrase or a descriptive phrase. Since the insured has no duty to maintain the policy except during the premium paying period it appears that these words merely describe the period during which the policy is maintained without adding any limitation not otherwise existing. The word "while," also, adds no limitation, since it means "as long as," "at the same time" and "at or during which time." Webster's International Dictionary. Accordingly, a slight transposition of words without any alteration in meaning results in the following: "If the insured after attaining age 10 and prior to attaining age 60, and during which time the policy is maintained during the premium paying period in full force and effect, has sustained . . . bodily injuries . . . causing death . . . the company will pay . . . an accidental death benefit." Accordingly, the beneficiary is entitled to double indemnity only if the insured died after reaching age 10 and before reaching age 60, and then only if the policy has been properly maintained, but this duty to maintain occurs only during the premium paying period and is descriptive of the time during which the insured must keep it in full force and effect, it being automatically in that status at all other times.

"Furthermore, any exception in a policy of insurance altering the terms of general liability is to be taken and construed most strongly against the insurer." *Atlas Assurance Co. v. Lies,* 70

Ga. App. 162, 165 (27 SE2d 791). If this provision in the instant policy is construed otherwise it would result in unequal advantage to policy holders between age 10 and age 60, some of whom might receive 10 years of accident protection, some only one, and some none. For example, if a policy were taken out on an infant at birth it would be fully paid by the time he reached 10 years of age; accordingly, he would never receive any double indemnity protection at all. If a fully prepaid life insurance policy were to be sold for a lump sum in advance there would be no "premium paying period" beyond the year in which the policy was purchased, and thus there would be only one year of double indemnity protection. It would be unreasonable to construe this provision so that the insurer would be excepted from liability as to certain policy holders and not as to others, depending simply upon the time and manner in which the policy was purchased.

The policy here under consideration, having been prepared by the insurer, could have easily set forth this provision in clear and simple language. Since the insurer did not see fit to set forth this provision clearly and succinctly, and since it is fairly susceptible of two constructions, that interpretation of the language most favorable to the insured must be given. This rule of construction is set forth in *Davis v. United American Life Ins. Co.*, 215 Ga. 521, 527 (111 SE2d 488) in which the court stated: "This court has repeatedly applied the rule and stated it in different words, some of such decisions being *Massachusetts Benefit Life Assn. v. Robinson*, 104 Ga. 256 (2), supra, where it is said: 'If a policy of insurance is capable of being construed in two ways, that interpretation *must* be placed upon it which is *most favorable to the insured* . . .' and *Johnson v. Mutual Life Ins. Co.*, 154 Ga. 653 (1, 2) (115 SE 14), that, 'If a policy of insurance is so drawn as to require an interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in

the preparation of which the insured has no voice.' Again it is stated in *Penn Mutual Life Ins. Co. v. Milton*, 160 Ga. 168 (1) (127 SE 140, 40 ALR 1382): 'If a policy of life insurance is capable of two constructions, that interpretation will be placed upon it which is most favorable to the insured.' "

We are therefore of the opinion that the double indemnity provisions of this policy were in effect at the time of the loss, it being a matter of proof as to whether or not the death was accidental within the meaning of the provisions of the policy.

4. The plaintiff contends that the policy of insurance was changed by an endorsement whereby the face amount of the policy was increased to $1,100. The original form of the policy limited the amount of insurance that the insured could obtain from the company to the amount of $1,000. The endorsement changed this provision to the extent that the insured could obtain coverage up to the amount of $1,100, if he so desired. However, the policy shows the insured obtained a policy of insurance for the face amount of only $1,034. The endorsement does not purport to change the face amount of the policy. It, therefore, follows that upon the death of the insured when the policy was in full force and effect, the insurance company was obligated to pay the beneficiary the face amount of the policy—$1,034, together with such benefits as might be due under the double indemnity provisions of said policy.

5. Ground 4 of the special demurrer attacks paragraph 14 of the petition, which sought penalty and attorney's fees "upon the ground that no bad faith has been shown on the part of the defendant, in that it is alleged that the defendant has offered to pay $1,034 to the petitioner, and neither in said paragraph, nor elsewhere in the petition, is it shown wherein the defendant is indebted in any greater amount." In view of Division 3 of this opinion, whereunder the defendant might be liable to the petitioner in an amount greater than $1,034 the question of penalty and attorney's fees is a jury question. Therefore, the court erred in sustaining this special demurrer.

Accordingly, the judgment of the trial court is reversed.

*Judgment reversed. All the Judges concur, except Felton, C. J., and Frankum, J., who dissent.*

FRANKUM, Judge, dissenting. I am constrained to dissent from the rulings made in Division 3 of the majority opinion.

Justice Mobley, speaking for the Supreme Court, stated two clear, settled rules governing the construction of contracts by the courts in *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302 (99 SE2d 95): "It is well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured. *Benevolent Burial Assn. v. Harrison*, 181 Ga. 230, 239 (181 SE 829); *Christensen v. New England Mutual Life Ins. Co.*, 197 Ga. 807, 813 (30 SE2d 471, 153 ALR 794); *Mass. Benefit Life Assn. v. Robinson*, 104 Ga. 256 (2) (30 SE 918, 42 LRA 261). But it is equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance, and this rule applies equally as well to insurance contracts as to any other contract. *Golden v. National Life & Acc. Ins. Co.*, 189 Ga. 79, 87 (5 SE2d 198, 125 ALR 838); *Yancey v. Aetna Life Ins. Co.*, 108 Ga. 349, 351 (33 SE 979); *Wheeler v. Fidelity & Casualty Co.*, 129 Ga. 237, 240 (58 SE 709); *Cato v. Aetna Life Ins. Co.*, 164 Ga. 392, 398 (138 SE 787); *Daniel v. Jefferson Standard Life Ins. Co.*, 52 Ga. App. 620 (2) (184 SE 366)."

The diversity of views between the one expressed in the majority opinion and the one expressed in this dissent is the inability of the members of this court to agree upon which one of the above rules is applicable to the facts in the instant case.

I cannot agree with the ruling made in Division 3 of the majority opinion because the words used in the double indemnity provision of the policy, namely, "after attaining age ten and prior to attaining age sixty, and while the policy is maintained in full force and effect during the premium paying period" are not ambiguous and express conditions precedent to the company's liability under the double indemnity provision. The majority view admits that the insured must have been at least ten years of age, and not more than sixty, at the time of his death as a con-

dition of liability of the insurer under the double indemnity provision of the policy. Following this condition is the phrase "and while the policy is maintained in full force and effect during the *premium paying period.*" (Emphasis added). I am of the opinion that this phrase is also a condition of the double indemnity provision. The effect of the majority view is to render the words "during the premium paying period" nugatory.

. An endorsement attached to the policy shows it to be a "paid up" policy with no additional premiums to be paid. In a similar case, the Supreme Court of Arkansas interpreted the meaning of "premium paying period" in a double indemnity provision of an insurance policy in which benefits were conditional upon the event that the insured's death occur during the premium period. The court construed the words "during the premium paying period" to mean that the provision for double indemnity in the event of accidental death was not in effect when the premiums had been paid in full, or, in other words, when the policy became a "paid up" policy. Hubach v. Mid-Continent Life Ins. Co., 228 Ark. 926 (311 SW2d 307). Likewise, in the instant case, the liability of the insurance company under the double indemnity provision is conditioned upon accidental death of the insured within the meaning of the policy "while the policy is maintained in full force and effect during the premium paying period." It is undisputed that the premium paying period had expired prior to the death of the insured. Accordingly, the insurance company should not be held liable under the double indemnity provision of the policy.

In my opinion, the words in this double indemnity provision are not ambiguous and should be given their literal meaning and their usual significance.

I am authorized to state that Felton, C. J., concurs in this dissent.

FELTON, Chief Judge, dissenting. The pertinent provisions in the policy in the instant case are: that the death must occur between the ages of ten and 60, *"and while the policy is maintained in full force and effect during the premium paying period."*

The pertinent provisions in the Hubach case, supra, are: that

death must occur before the age of 60 and "(c) *before a default in any premium, and (a) within the premium paying period.*"

As Judge Frankum stated, the majority opinion obliterates the words "during the premium paying period." This they should not do. *The words in the instant policy simply say in one "unlettered" expression what the policy in the Hubach case says in the "lettered" provisions (a) and (c).* The effect of the majority opinion is that the expression in the instant policy "and while the policy is maintained in full force and effect during the premium paying period" means only *that the policy must not be in default.* It does mean that; but it also means more. It means what it says, that death must occur during the ten-year premium paying period. The lettering of the provisions in the Hubach case has no virtue. An unlettered rose smells just as sweet. The provision in the instant policy might have had some lettering done to it. For example, it could have been written "(b) and while the policy is maintained in full force and effect (c) during the premium paying period." I repeat, the provision in the instant policy next above quoted simply *combines* the conditions stated in the Hubach policy under the letters (a) and (c). The construction by the majority that the disputed section means only that the policy not be in default is considerably more strained than the dissenters', it is respectfully submitted.

Here we do not have a case where an infant is insured who receives no double indemnity benefit. Nor do we have the case of a single premium policy. Assuming that the company wrote such a policy we cannot assume that the double indemnity provision would not have provided that it was effective for ten years.

It should also be noted that the words "is maintained" are significant. During the first ten years of the policy it required the affirmative action by the insured to keep the policy in force—the payment of premiums. After ten years the policy was paid up and no active maintenance was required. It then maintained itself.

### ON MOTION FOR REHEARING.

Counsel for defendant in error insists on motion for rehearing that this court should follow the case of American Trust

Co. v. American Cent. Life Ins. Co., 5 F2d 69, 71, and the case of Hubach v. Mid-Continent Life Ins. Co., 228 Ark. 926 (311 SW2d 307) (cited in the minority opinion), on the question of double indemnity for accidental death, there being no controlling precedents in Georgia.

An examination of these cases, however, readily discloses that they are not at all in point on the issue in dispute in the instant case. The sole issue in these cases was the definition to be given to the term "premium paying period," it being clearly provided in the policies involved therein that, as a condition precedent to recovery, the death of the insured must occur during said premium paying period. The language used in the policy under consideration in the Hubach case, supra, is set forth as follows: "Upon receipt of due proof that the death of the insured was caused directly, independently and exclusively . . . from bodily injuries effected solely through external, violent and purely accidental means . . . and that such death occurred (a) within the premium paying period, and (b) before the insured attained the age of 60 years, and (c) before a default in any premium, and (d) within thirty days from the date of such accident, the company will pay double the face amount of this policy in full settlement hereof."

It can thus be seen how such provisions can be clearly expressed and enumerated. A comparison of the language used in the policy in the Hubach case, supra, with that used in the policy under consideration in the instant case can only lead one to the conclusion that while such conditions can be stated in clear and unambiguous language it was not done in this case. The language used in the instant policy was vague, evasive and ambiguous, and was easily susceptible of the construction that if the policy was maintained in full force and effect during the premium paying period, then the accidental death benefits would be applicable after the cessation of the premium paying period provided that the death of the insured occurred after the date of the policy and between the ages of 10 and 60. Under the principles of construction set forth in the majority opinion, that construction most favorable to the insured had to be adopted.

*Motion for rehearing denied.*