The Honorable Bill J. Ford Bank Commissioner, Arkansas State Bank Dept. Suite 500, Tower Building 323 Center Street Little Rock, AR 72201-2613
Dear Mr. Ford:
This is in response to your request for an opinion regarding the legality of the "Election Day CD" offered by First National Bank of Hot Springs, Hot Springs National Park, Arkansas. Your specific question is restated as follows:
 Is the rate to be paid on the certificate of deposit, which may vary depending upon the final results of the presidential election, in violation of the state's criminal code; more particularly, does this instrument meet the definition of a lottery?
Lotteries are specifically proscribed under Arkansas law. Ark. Const. Art. 19, 14; Arkansas Code of 1987 Annotated 5-66-118 — 66-119 (Supp. 1987). The Arkansas Supreme Court has stated that a "lottery" is a "species of gaming, which may be defined as a scheme for the distribution of prizes by chance among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize." Burks v. Harris, 91 Ark. 205, 208,120 S.W. 979 (1909); see also, Longstreth v. Cook, 215 Ark. 72,220 S.W.2d 433 (1949); Shuffield v. Raney, 226 Ark. 3, 287 S.W.2d 588
(1956). The term also includes buying a chance for valuable consideration paid or to be paid to obtain a possible prize. State v. Bass, 224 Ark. 976, 277 S.W.2d 479.
In Longstreth, supra, the Arkansas Supreme Court stated "that to constitute a lottery, ". . . it is essential not only that the element of chance be present, but also that it controls and determines the award of the prize whatever it may be." Id. at 80. The issue before the Court in that case was whether betting on horse races through use of the pari-mutuel system constituted a lottery. In reaching the conclusion that this did not constitute a lottery, the Court looked to a number of factors involved in the placing of bets and found that the element of chance, while present, did not control the final outcome of the races themselves. The Court focused in particular upon a number of factors to show that the outcome of the races were not controlled by luck or chance alone. Such information included: experience and ability of the trainers, physical condition and qualities of the horses, skill of the jockeys, and past performance of the horses in prior race events. It was determined such information afforded bettors "more discrimination and with improved chances of selecting or picking a winning." Id. at 82. See also Scott v. Dunaway, 228 Ark. 926, 311 S.W.2d 307 (1958).
It may be successfully contended, based upon the rationale articulated in Longstreth, that the offer involving a bonus to be paid in this instance in addition to the guaranteed rate of interest would not constitute a lottery. The bonus is paid to those customers who correctly choose the party winning the presidential election. One may argue that the choice of a Democratic or Republican candidate is not left to chance alone, nor is it controlling in this instance. In particular, customers may look to several factors before making their selection. They may, for instance, consider the political power and experience of the several candidates, polls which reveal various information with respect to popularity of the candidates among the electorate, as well as results from various state primaries. The factors listed above are arguable similar to those considered in Longstreth and would conceivably diminish the element of chance in predicting the successful candidate.
It may reasonably be concluded from the foregoing that an Arkansas Court, if faced with this question, would not classify this "Election Day CD" as a "lottery" within the constitutional prohibition.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elizabeth A. Walker.
Sincerely,
STEVE CLARK Attorney General